**FILED- MQ**
February 25, 2022 12:23 PM

Clerk of Cout
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:_____slk_____/ _M_ 2-25-22

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

ANN COFFEY,                          )
                                     )
        Plaintiff,                   )
                                     )       Case No.:
v.                                   )
                                     )       **Honorable Judge**

**2:22-cv-39**

Jane M. Beckering, District Court Judge
Maarten Vermaat, Magistrate Judge

### JURY DEMAND

THE MUNICIPALITY OF BAY VIEW (49770), MICHIGAN;

THE INDIVIDUAL BOARD MEMBERS OF THE MUNICIPALITY OF BAY VIEW (THE METHODIST CHRISTIAN CHURCH IS NOT ITS GOVERNING BODY);

THE BAY VIEW REAL ESTATE MANAGEMENT, INC., a domestic profit corporation (49770 MICHIGAN);

THE BAY VIEW TOWN CRIER, a newspaper publication

CAROL NEITHERCUT, (INDIVIDUALLY)

ERIC BREISACH, ESQ. (INDIVIDUALLY)

PLUNKETT COONEY LAW FIRM (PETOSKEY, MICHIGAN);

HENRY COONEY, ESQ.,

JAMES J. MURRAY, ESQ. {P40413} (INDIVIDUALLY)

JOHN PATRICK DEEGAN, ESQ. {P55630}

_Ann Coffey_ 2/23/2022

MATTHEW CROSS, ESQ.

MICHAEL S. BOGREN, ESQ.

ROBERT A. CALLAHAN, ESQ.

DROST LANDSCAPING (PETOSKEY, MICHIGAN)

BARBARA PFIEL, (PETOSKEY, MICHIGAN) (INDIVIDUALLY)

MIKE SPENCER, (PETOSKEY, MICHIGAN); (INDIVIDUALLY)

JAKE PORATH, (PETOSKEY, MICHIGAN); (INDIVIDUALLY)

TONY PRESLY, (PETOSKEY, MICHIGAN); (INDIVIDUALLY)

RANCE CARPENTER, (PETOSKEY, MICHIGAN); (INDIVIDUALLY)

|  |  |
|---|---|
| | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## JURY DEMAND

**COMPLAINT FOR CIVIL PENALTIES, INJUNCTIVE RELIEF, AND OTHER
RELIEF AGAINST THE MUNICIPALITY OF BAY VIEW AND PLUNKETT COONEY**

**INVOLVING THE "FAIR DEBT COLLECTION PRACTICES ACT" & "FEDERAL
TRADE COMMISSION ACT"; etc.**

Plaintiff, Ann Coffey, for her Complaint alleges as follows:

JURISDICTION AND VENUE

1. This is an action arising under Sections 5(a), 5(m)(l)(A), 13(b), and 16(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S. C. §§ 45(a), 45(m)(l)(A), S3(b), and 56( a), and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, to obtain monetary civil penalties, a permanent injunction, restitution, disgorgement, and other equitable relief for violations of the FDCPA and Section 5 of the FTC Act by **Plunkett Cooney Law Firm; the Municipality of Bay View; and Eric Breisach, Esq., as well as other Individual Board Members of the Municipality of Bay View (the Methodist Christian Church is not its "governing" body); the Bay View Real Estate Management, Inc., a domestic profit corporation; James J. Murray Esq.; Barbara Pfiel ; Michael Spencer; Jake Porath; Rance Carpenter; Carol Neithercut; Tony Presly; etc.**

2. This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355, and under 15 U.S.C. §§ 45(m)(l)(A), 53(b), 57b, and 1692l. This action arises under 15 U.S.C. § 45(a)(l) and 15 U.S.C. § 1692l.

3. Venue is proper in the United States District Court under 28 U.S.C. §§ 139l(b)-(c) and 1395(a) and 15 U.S.C. § 53(b).  In fact, the leading decision-making authority in Bay View is President Carol Neithercut who physically resides in Chicago, Illinois and therefore conducts Bay View's business from her Chicago, Illinois residence during the months of November, December, January, February, March, and April of each year.  Realizing this fact does make either the Northern District of Illinois US Federal Court an appropriate venue combined with the City of Freeport's involvement with Bay View or the Western District of Michigan US Federal Court.

4. The Federal Trade Commission is an independent agency of the United States government given statutory authority and responsibility by the FTC Act, as amended, 15 U.S.C. §§ 41-58. The Federal Trade Commission is charged, inter alia, with enforcing Section S(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair and deceptive acts or practices in or affecting commerce, and the FDCPA, 15 U.S.C. §§ 1692-1692p, which imposes duties upon debt collectors.  Defendants Plunkett Cooney Law Firm; the Municipality of Bay View; and Eric Breisach, Esq., as well as other Individual Board Members of the Municipality of Bay View (the Methodist Christian Church is not the municipality of Bay View's "governing" body, contrary to the implied claims made by Bay View and Plunkett Cooney); the Bay View Real Estate Management, Inc., a domestic profit corporation. At all times relevant to this Complaint, Defendants have transacted business throughout the United States. Defendants' revenue from accounts receivable management exceeds over 1 million dollars.

5. Plunkett Cooney has been tasked by the Bay View Board and Eric Breisach, Esq. as a "debt collector" as defined in Section 803(6) of the FDCPA, 15 U.S.C. § J692a(6).

6. It is believed that Bay View Real Estate Management and Plunkett Cooney is a "debt collector" as defined in Section 803(6) of the FDCPA, 15 U.S.C. § 1692a(6).

DEFINITIONS

7. The term "consumer," as used in this Complaint means any natural person obligated or allegedly obligated to pay any debt, as "debt" is defined in Section 803(5) of the FDCPA, 15 U.S.C. § l692a(5).

8. The term "location information," as used in this Complaint means a consumer's place of abode and the consumer's telephone number at such place, or the consumer's place of employment, as defined in Section 803(7) of the FDCPA, 15 U.S.C. § 1692a(7).

COMMERCE

9. At all times material to this Complaint, it is alleged that Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 u.s.c. § 44.

10. Bay View denies the fair competition among licensed Real Estate Agents. (Please see Exhibit from Christies Real Estate describing Bay View's unfair business practices for buying and selling of property to consumers across the USA and around the world).

DEFENDANTS' BUSINESS PRACTICES

11. From their offices throughout the State of Michigan (collectively "Defendants") engage in consumer debt collection activities throughout the United States.

12. Defendants regularly attempt to collect debts by contacting consumers by telephone, U.S. mail, and other instrumentalities of interstate commerce. Though, in this instance, it is not believed that Plunkett Cooney has of yet contacted Plaintiff by phone.

13. Bay View treats homes quite unfairly as mere property, not "real estate" per se. On the other hand, Bay View has selected only two Real Estate companies to enjoy the "commissioned" real estate business of buying and selling Bay View homes.

14. Bay View quite unfairly denies homeowners the right to choose their own licensed Real Estate Agent to sell their own home. Instead, Bay View and Plunkett Cooney threaten to auction Plaintiff's market value $300,000.00 home in order to satisfy a padded bill of at first $3,000.00---then padded it more by illegally seizing/thieving Plaintiff's brand new roofing bundles of shingles, ladders, supplies, etc. and then charging Plaintiff literally thousands of dollars to illegally seize same in a deliberate action of "extortion of Plaintiff's resources".

15. Bay View quite unfairly denies homeowners the right to get a fair market value purchase of their home by denying a homeowner from marketing their home on the MLS. This then becomes a major impediment for a homeowner to achieve any realistic "marketplace exposure" and therefore a true and actual market value sale of their home.

16. Bay View quite unfairly orders homeowners to provide first right of refusal to neighbors before selling one's home.

17. In numerous instances, Defendants have called upon Plaintiff at her private property repeatedly or continuously with the intent to stalk, annoy, harass, and abuse. For example:

(i) Defendants continue to step foot on Plaintiff's private property even after being told, either orally or in writing, to stop;

(ii) Plaintiff's family have been harassed by Mike Spencer on multiple occasions or frequently over an extended period of time (for example, without invitation and without permission, Mike Spencer would appear on Plaintiff's property many times during spring, summer, and fall over the course of the past five years); and

18. In numerous instances, Defendants appear on the private property of Plaintiff, even though Defendants know Plaintiff has previously and on many occasions ordered them off Plaintiff's private property. Harassment involves unwanted contact that seriously annoys or alarms someone, causes them emotional distress, and can involve a single incident. **Stalking**, on the other hand, involves a pattern of repeated and unwanted attention, harassment, contact, or any other course of conduct directed at a specific person that would cause a reasonable person to feel fear---according to the USA Department of Justice.  Stalking behavior (involves two or more incidents) committed over time and causes fear. Mike Spencer and his paid staff have satisfied this definition many times over.  At one point, Mike Spencer attempted to have Plaintiff illegally arrested and the Emmet County Sheriff had to be called in order to intervene and stop such unconstitutional Bay View conduct.

19. In numerous instances, Defendants leave printed announcements/messages and "Town Crier" newspaper type defamation on various buildings and bulletin boards within Bay View; on the Bay View website (internet), available to an entire community of persons as well as worldwide via the internet, in which Defendants divulge that:

(1) they are a debt collector, are attempting to collect a debt, or that the consumer and Plaintiff hereby owes a debt; and

(2) the name of the consumer. For example, in numerous instances, Defendants have left such printed announcements/messages and "Town Crier" newspaper type defamation for consumers even though the method of communication via bulletin board on generic Bay View public buildings (including the US Post Office 49770 building bulletin board) either does not plainly belong to Plaintiff or can be easily read by any and all members of the public who just happen to be walking past said written announcement. In many if not most instances, individuals other than the consumer and Plaintiff see the "Town Crier" newspaper type defamatory announcement/message, thereby disclosing consumers' alleged debts to persons other than the consumer and Plaintiff without the prior consent of the consumer and Plaintiff.

(3) Defendant Mike Spencer (Bay View Executor Director)  has interrupted and harassed Plaintiff's family about debt  on more than one occasion at the Croquet Course during and while Plaintiff's family is/was fully engaged with "match play" against other Bay View members...thereby making other Bay View community members fully aware of Plaintiff's debt and of receiving debt associated harassment

VIOLATIONS OF SECTION 5 OF THE FTC ACT

20. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce." Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

COUNT I

Unsubstantiated Representations about Owing a Debt

21. In numerous instances, during various  communications to Plaintiff who had previously told Defendants that they did not owe the Drost Landscaping debt that Defendants were attempting to collect, Defendants have represented, directly or indirectly, expressly or by implication, that the Plaintiff owed the debt.  In fact, Plaintiff had a separate contract with Drost Landscaping created in summer 2019.  Defendants have no standing to represent a Drost Landscaping debt since Drost is a separate corporation from Plunkett Cooney and Bay View.  In an effort to create the appearance that Bay View had standing to represent an alleged Drost Landscaping debt, however, in July 2020 Bay View created a "Master Contract" with Drost Landscaping ex post facto.  Said Bay View "Master Contract" with Drost Landscaping made in July 2020, however, cannot supersede Plaintiff's personal contract with Drost Landscaping made in the summer of 2019.

22. In truth and in fact, in numerous instances, Defendants have not had a reasonable basis for the representations described in Paragraph 21 at the time the representations were made.

23. Therefore, the making of the representations set forth in Paragraph 21 constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).


VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

24. In 1977, Congress passed the FDCPA, 15 U.S.C. §§1692-1692p, which became effective on March 20, 1978, and has been in force since that date. Section· 814 of the FDCPA, 15 U.S.C. § 1692l, authorizes the Commission to use all of its functions and powers under the FTC Act, to enforce compliance with the FDCPA by any debt collector, irrespective of whether that debt collector is engaged in commerce or meets any other jurisdictional tests set by the FTC Act. The authority of the Commission in this regard includes the power to enforce the provisions of the FDCPA in the same manner as if the violations of the FDCPA were violations of a Federal Trade Commission trade regulation rule.


COUNT III False or Misleading Representations

25. Section 807 of the FDCPA, 15 U.S.C. § 1692e, prohibits debt collectors from using any false, deceptive, or misleading representation or means in connection with the collection of any debt. .

26. In numerous instances, in connection with the collection of debts, Defendants, directly or indirectly, have used false, deceptive, or misleading representations or means.

27. Defendants' representations as set forth regarding the Drost Landscaping's padding to Bay View's bill constitute false, deceptive, or misleading representations or means, in violation of Section 807 of the FDCPA, 15 U.S.C. § 1692e.  At one point, in August/September 2019 Defendant Mike Spencer authored a false, libelous, and defamatory report to the residents of Bay View about Plaintiff's son which caused Plaintiff's son severe emotional distress and injury.

28. The acts and practices alleged herein constitute violations of Section 807 of the FDCPA, 15 U.S.C. § 1692e. Pursuant to Section 814(a) of the FDCPA, 15 U.S.C. § 1692l(a), the acts and practices alleged herein also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

29. Bay View, Mike Spencer, and Barbara Pfiel illegally and without Plaintiff's consent commandeered Plaintiff's State of Michigan Tax Settlement Refund.  Mike Spencer and Barbara Pfiel illegally applied Plaintiff's State of Michigan Tax Settlement Refund directly to Plaintiff's debt as if it were their money to do so.

30. On February 7, 2022 at about 5pm, in the dead of winter, Defendant Bay View and Jake Porath claimed falsely that while Defendant was posting a debt notice on Plaintiff's Bay View doors (where nobody was living---the Bay View community closes down during winter) that Plaintiff's husband somehow simultaneously sabotaged his own newly replaced (summer 2020) gas line just before Defendant Porath was posting his debt notice.  Defendant Porath provides unbelievably implausible rationale as to why or when Plaintiff's husband would or could do such a thing as delineated in Defendant Porath's lying affidavit.  Defendant Jake Porath, out of desperation for losing control of the facts and a malicious penchant to malign and vilify Plaintiff's husband's esteemed character, chose to draft and sign a Plunkett Cooney prepared sworn affidavit that tangentially glances abject perjury.  In other words, in Defendant Jake Porath's desperation to make Plaintiff's husband appear to be a criminal---Defendant Jake Porath appears to create criminal liability for himself.  The maliciously false narrative of Defendant Barbara Pfiel and Defendant Jake Porath can be described as nothing less than utterly diabolical.


COUNT IV Unlawful Location Communication- Multiple Communications

29. Section 804 of the FDCPA1 15 U.S.C. § 1692b, governs the manner in which debt collectors may communicate with any person other than the consumer for purposes of acquiring location information about the consumer. Section 804(3) specifically prohibits debt collectors from communicating with any person about a consumer more than once unless requested by the person or unless the debt collector

reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete information.

30. In numerous instances, through the means previously described, in connection with the collection of debts, Defendants, directly or indirectly, have communicated more than once with persons other than the consumer for the purpose of obtaining location information about the consumer without a reasonable belief that the person's previous denial of knowledge of the consumer or the consumer's location was erroneous or incomplete and that such person now has correct or· complete location information.  Plaintiff argues that this paragraph also applies due to the fact that Bay View published names in the "Town Crier":  Bay View's form of newspaper type libelous defamatory behavior.  Moreover, Defendant Mike Spencer personally harassed Plaintiff at her home and at the Croquet Course.

31. The acts and practices alleged in Paragraph 30 constitute violations of Section 804(3) of the FDCPA, 15 U.S.C. § 1692b(3). Pursuant to Section 814(a) of the FDCPA, 15 u.s.c: § 1692l(a), the acts and practices alleged in Paragraph 30 also constitute unfair or deceptive acts or practices in violation of Section S(a) of the FTC Act, 15 U.S.C. § 45(a).


COUNT V Unlawful Communications at Unusual or Inconvenient Time or Place

32. Section 805 of the FDCPA, 15 U.S.C. § 1692c, governs communications in connection with a debt generally. Section 805(a)(l) specifically prohibits communications with a consumer in connection with the collection of any debt at a time or place known or which should be known to be inconvenient to the consumer, and Section 805(a)(3) specifically prohibits communications with a consumer at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication.

33. In numerous instances, through the means described previously, in connection with the collection of debts, Defendants, directly or indirectly, have communicated with consumers in connection with the collection of debts at a time or place known by Defendants or which should be known by Defendants to be inconvenient to the consumer. Defendants did ask the place of employment of Plaintiff and, Defendants did cause Plaintiff to feel uncomfortable upon seeing them in her place of employment where she was compelled to serve them.  This combined with the ubiquitous nature of the fact that Bay View published names in the "Town Crier":  Bay View's form of newspaper type libelous defamatory behavior thus satisfies the breach of this particular aspect of the **Fair Debt Collection Practices Act**. Furthermore, the "Town Crier" was published on the internet thereby compounding the implied "ubiquity". Furthermore, the "Town Crier" was published on the internet thereby compounding the implied "ubiquity".  Defendant Mike Spencer maliciously harassed Plaintiff's family at the Croquet Course directly in front of other Bay View residents.

34. In numerous instances, through the means described previously, in connection with the collection of debts, Defendants, directly or indirectly, have communicated with consumer at the consumer's place of

employment even though Defendants know or have reason to know that the consumer's employer prohibits the consumer from receiving such communication. Defendants did ask the place of employment of Plaintiff and Defendants did cause Plaintiff to feel uncomfortable upon seeing them in her place of employment where she was compelled to serve them. This combined with the ubiquitous nature of the fact that Bay View published names in the "Town Crier": Bay View's form of newspaper type libelous defamatory behavior thus satisfies the breach of this particular aspect of the Fair Debt Protection Act. Furthermore, the "Town Crier" was published on the internet thereby compounding the implied "ubiquity".

35. The acts and practices alleged in Paragraphs 33-34 constitute violations of Section 805(a) of the FDCPA, 15 U.S.C. § 1692c(a). Pursuant to Section 814(a) of the FDCPA, 15 U.S. C. § 1692l(a), the acts and practices alleged in Paragraphs 33-34 also constitute unfair or deceptive acts or practices in violation of Section S(a) of the FTC Act, 15 U.S.C. § 45(a).

COUNT VI Unlawful Third-Party Communications

36. Section 805 of the FDCPA, 15 U.S.C. § I692c, governs communications in connection with a debt generally. Section 805(b) specifically prohibits communications about a debt with any person other than the consumer, a consumer reporting agency, the creditor, or their attorneys except as allowed by Section 804.

37. In numerous instances, through the means described previously, in connection with the collection of debts, Defendants, directly or indirectly, have communicated about a debt with persons other than the consumer, a consumer reporting agency, the creditor, or their attorneys without the permission of the consumer, or as otherwise allowed by Section 804. In fact, Defendant Bay View has communicated Plaintiff's debt in a grouping of homeowner's names on various bulletin boards of public buildings throughout Bay View and the internet. All of these "communications" are disturbing not just to those whose names are defamed and listed, but also to friends and family members of those listed who are forced to witness the unpleasant illegality and injustice. This combined with the ubiquitous nature of the fact that Defendant Bay View published names in the "Town Crier": Defendant Bay View's form of newspaper type libelous defamatory behavior thus satisfies the breach of this particular aspect of the Fair Debt Collection Protection Act (FDCPA). Furthermore, the "Town Crier" was published on the internet thereby compounding the implied "ubiquity" and ubiquitous nature of Defendant Bay View's breach of Federal law. One of the most widely read bulletin boards---next to the electronic publicizing of the names on Bay View's internet website---is the one which sits in front of Bay View's own 49770 USA Post Office. **Indeed, Bay View has the audacity to defamingly publish names (as an alleged deterrent) on the bulletin boards which sit directly in front of the USA Post Office.**

Incredibly, the backdrop of a stellar wholly owned USA Government operation, the USPS, itself has served for years as mechanism by which to attract the most eye-catching attention to defame homeowner's who are allegedly slightly in arrears. Such malicious methods---either the electronic "bulletin board" of the internet disseminated "Town Crier" or the "old fashioned" physical bulletin

board located out front of the Bay View USPS---serves Defendant Bay View's "gossip hungry" defaming element of its ruling class "Stealth Wealth" society led by Defendant Bay View's President: Defendant Carol Neithercut. And Bay View's own mathematical formula for determining who is in arrears and who is not needs a full airing within this Federal Court. This unChristian-like behavior proves beyond a shadow of a doubt that Defendant Bay View is not "governed" by the Christian Church. A Christian Church **prays** for its people in the midst of Pandemic hardships. A Christian Church **preys** upon its people in the midst of Pandemic hardships: I think not. A true Christian Church possesses not just sympathy, but empathy for all of humanity forced to face down a once in a lifetime Pandemic. Defendant Bay View as a municipality is governed by a few families who consider themselves to be either "elite" or "old money" when in actual fact they are neither. Plaintiff hereby states for the record that she is not aware of any family in Bay View to be "old money" or from "old money". There might, however, be a few wannabees. Dare not be on the "outs" with one of Bay View's "governing families" or you will pay a big price. You will find "fuzzy math" applied to your account. You will find bills from Defendant Drost or other landscaping companies on your account that you didn't know were possible. You will be stalked and harassed. Indeed, you will be shunned and oppressed. Dare to bring a Federal lawsuit against Bay View and who knows what your future holds.

Defendant Bay View, in addition to using fuzzy math, has illegally padded bills. In Plaintiff's case Bay View has added a Drost Landscaping bill to Plaintiff's account without the prior permission of Plaintiff. Padding a homeowner's account with things the homeowner never knew about or never gave permission to do is one mechanism by which Defendant Bay View can extort the resources of a Senior Citizen homeowner. The formulae, the fuzzy math, the padding of bills, the illegal communication of alleged "debt" and alleged "indebtedness" are all violations of USA Federal law used by Defendant Bay View tactically to socially ostracize a homeowner who is not liked by Defendant Bay View's governing families. Again, this is proof positive that the Christian Church in no way "governs" Defendant Bay View. The only remedy to preclude Defendant Bay View's governing families from harassing homeowner's they don't like is for this **Federal Court to declare an order which converts all residential "Leasehold" in Bay View into residential "Freehold"**. Therefore, never again, will Defendant Bay View be able to charge increasingly exorbitant rents for land one's home already sits upon. Eliminating Bay View's ability to place one's home in a "Wizard of Oz tornado of biased math formulae" is one penalty Defendant Bay View must suffer for so grossly violating the **"Fair Debt Collection Protection Act" (FDCPA).**

Defendant Bay View has no moral authority to align itself with the Christian Church. In fact, Defendant Bay View maligns the Christian Church by attempting to do so. The Christian Church should not want anything to do with Defendant Bay View. Defendant Bay View never allowed law enforcement inside Bay View to interview witnesses of the brutal rape of a teenage girl about 50 years ago. Did the Christian Church truly govern Defendant Bay View when that brutal rape of a teenage girl occurred? Did the Christian Church truly govern Defendant Bay View when Plaintiff's minor child of 4 years of age was knocked unconscious and picked up from Tot Lot with a black eye; yet Polly Wilkinson refused to provide any explanation to either parent of what she knew happened? She destroyed all evidence related to any incident report about it. How is that not criminal?

38. The acts and practices alleged above constitute violations of Section 805(b) of the FDCPA, 15 U.S.C. § 1692c(b). Pursuant to Section 814(a) of the FDCPA, 15 U.S.C. § I692l(a), these acts and practices alleged in Paragraph 37 also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

This combined with the ubiquitous nature of the fact that Defendant Bay View published names in the "Town Crier":  Defendant Bay View's form of newspaper type libelous defamatory behavior thus satisfies the breach of this particular aspect of the **Fair Debt Collection Protection Act (FDCPA).** Furthermore, the "Town Crier" was published on the internet thereby compounding the implied "ubiquity".

COUNT VII   Unlawful Failure to Cease Communications and Unannounced Visits to Plaintiff's Property by Bay View, Mike Spencer, Jake Porath, Rance Carpenter, and Plunkett Cooney Law Firm

39. Section 805 of the FDCPA, 15 U.S.C. § 1692c, governs communications in connection with a debt generally. Section 805(c) specifically prohibits communication with a consumer with respect to a debt if the consumer has notified the debt collector in writing that the consumer refuses to pay a debt (in this case Plaintiff made it clear that Defendant Bay View did not have the standing to impose the Defendant Drost Landscaping bill or that the consumer wishes the debt collector to cease further communication with the consumer except to advise the consumer that the debt collector's further efforts are being terminated, to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor, or to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

40. In numerous instances, through the means described previously, in connection with the collection of debts, Defendants, directly or indirectly, have communicated with consumers with respect to a debt after the consumers have notified Defendants verbally that the consumers wish Defendants to cease further attempts to come onto Plaintiff's property.  Most notably Plaintiff's notifications for Defendants to cease coming onto Plaintiff's property can be viewed on the Emmet County Sheriff Officers' Badge Cameras in August 2020.  In fact, one of the reasons Defendant appeared on Plaintiff's property was to further pad the Bay View Account against Plaintiff. Robert F. Whitmer, Esq., a next door neighbor who was the family attorney for Plaintiff, advised Plaintiff that Defendant Mike Spencer and Defendant Bay View were guilty and liable, therefore, of extorting Plaintiff's resources.  Defendant Bay View's communications were not made to advise the consumers that Defendants' further efforts were being terminated, to notify the consumers that Defendants or creditors may invoke specified remedies which are ordinarily invoked, or to notify the consumers that Defendants or creditors intended to invoke a specified remedy.  Defendant Bay View was in no way trying to reduce Plaintiff's debt, but increase it substantially in order to strategically take Plaintiff's home from her.

41. The acts and practices alleged in Paragraph 48 constitute violations of Section 805(c) of the FDCPA, 15 U.S.C. § 1692c(c). Pursuant to Section 814(a) of the FDCPA, 15 U.S.C. § 1692l(a), the acts and practices alleged in Paragraph 40 also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S. C. § 45(a).

COUNT VIII   ANNOYING, ABUSIVE, HARASSING, STALKING, OPPRESSIVE CONDUCT

**Stalking** involves a pattern of repeated and unwanted attention, harassment, contact, or any other course of conduct directed at a specific person that would cause a reasonable person to feel fear---according to the USA Department of Justice.  Stalking behavior (involves two or more incidents) committed over time and causes fear.  Mike Spencer and his paid staff have satisfied this definition many times over.  At one point, Mike Spencer attempted to have Plaintiff illegally arrested and the Emmet County Sheriff had to be called in order to intervene and stop such unconstitutional Bay View conduct.

42. Section 806 of the FDCPA, 15 U.S.C. § 1692d, prohibits debt collectors from engaging in any conduct the natural consequence of which is to harass, oppress, stalk or abuse any person in connection with the collection of a debt. In fact, Defendant Bay View has caused not only to Plaintiff, but many other Bay View homeowners to be isolated, oppressed, and socially ostracized by publishing their names on the internet for the world to see.  Bay View also posts and publicizes names, including that of Plaintiff, on bulletin boards of various Public Bay View buildings, including Bay View's USA Government Post Office in Bay View (49770). Plaintiff has paid Bay View at least $10,000.00 cash since September 2020.  Yet, Bay View and Plunkett Cooney insist Plaintiff is not current.  A forensic accounting of Bay View's bookkeeping practices is essential to resolving grievances with Defendant Bay View and Defendant Plunkett Cooney.  Moreover, Defendant Bay View commandeered Plaintiff's State of Michigan Tax Settlement Refund monies without Plaintiff's knowledge or consent.  Plaintiff never saw a penny of the Bay View litigation settlement refund money that it had clawed back from Bear Creek Township.

43. In numerous instances, through the means described in previous paragraphs, in connection with the collection of debts, Defendants, directly or indirectly, have engaged in conduct the natural consequence of which is to stalk, harass, oppress, or abuse persons. In fact, on several occasions Defendant Mike Spencer personally harassed Plaintiff that he would not offer her a membership application until any alleged arrears were paid up to date.  Defendant Mike Spencer, on numerous occasions, would show up at Plaintiff's home unannounced and without Plaintiff's permission and demand to know information about Plaintiff's children.  Plaintiff paid Defendant Jake Porath, Bay View's Superintendent of Grounds, in October 2020 a $500.00 "Refundable" Landscaping Permit fee.  To date, neither Defendant Jake Porath nor Defendant Mike Spencer nor Defendant Barbara Pfiel has bothered to return Plaintiff's $500.00.  Quite the contrary, on or about August 19, 2021 Defendant Mike Spencer and Defendant Jake

Porath, apparently with Defendant Plunkett Cooney's approval had the audacity to remove thousands of dollars of Plaintiff's neatly stacked bundles of roofing shingles; primed & painted lumber; trax; adjustable ceiling columns; tarps; ladders; and even climbed up on the roof to remove the human rooftop safety harness & anchoring system; etc. Despite the fact that Plaintiff held a current Bear Creek Township Roofing Construction Permit. Moreover, Defendant Mike Spencer and Defendant Jake Porath astoundingly decided to pad Plaintiff's bill by packing on an additional >$3,000.00 for said unconstitutional seizure and removal of brand new roofing materials. To this day, neither Defendant Mike Spencer nor Defendant Jake Porath have bothered to inform Plaintiff of the whereabouts of Plaintiff's thousands of dollars of personal property and possessions and brand new roofing materials.

Defendant Bay View, Defendant Carol Neithercut, and Defendant Robin Simms all have ordered Plaintiff not to speak or say a word. Therefore, Bay View has interfered with Plaintiff's rights to consortium. Thus Bay View owes Plaintiff for damages due to loss of consortium.

44. In numerous instances, through the means described in the above Paragraphs, in connection with the collection of debts, Defendants, directly or indirectly, have caused harassing, annoying, and abusive conduct repeatedly or continuously with intent to do just that: annoy, abuse, or harass the Plaintiff, and the natural consequence of such has been to harass, oppress or abuse Plaintiff and other persons.

45. The acts and practices alleged in Paragraphs 42-43 constitute violations of Section 806 of the FDCPA, 15 U.S.C. § 1692d. Pursuant to Section 814(a) of the FDCPA, 15 U.S.C. § 1692l(a), the acts and practices alleged in Paragraphs 42-43 also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

COUNT IX   CRUEL AND UNUSUAL PUNISHMENT BY DEFENDANT PLUNKETT COONEY AND BAY VIEW

46. After Defendant Plunkett Cooney and Bay View obtained their highly deceptive "Default Judgment" and "Default Order" by using USA Mail to deceptively "notify" Plaintiff by sending mail to an outdated address almost 100 miles away from Bay View in **Cedar, Michigan** near the Sleeping Bear Dunes National Park. Defendants all knew at all times that Bay View addresses are actively occupied annually during the months of April, May, June, July, August, September, October, and November of every year dating back more than 130 years. Yet, neither Defendant Bay View nor Plunkett Cooney never bothered to mail anything to Plaintiff's Bay View address of 1937 Stephens Lane---thereby ensuring Plaintiff was being set up for a "Default Judgment" and "Default Order". This kind of deception is unforgiveable given the fact that Defendant Mike Spencer, Defendant Bay View, and Defendant Plunkett Cooney's strategy at all times was to take Plaintiff's home from her and her husband.

47. On or about Friday August 20, 2021 (almost exactly a year from Defendant Mike Spencer's momentous public screaming event against Plaintiff where and when he scathingly declared while on Plaintiff's property: **"...there's not a Judge in Emmet County who will uphold your USA Constitutional Rights!")** again without prior notice, Bay View descended upon Plaintiff's home and physically seized thousands of dollars of Plaintiff's roofing materials; bundles of shingles; ladders; scaffolding; adjustable support columns; lumber; plastic docbox (which contained Plaintiff's **"State of Michigan Authorized Bear Creek Township Roofing Permit"**) and even entered Plaintiff's home and climbed on top of

Plaintiff's roof where they seized and removed Plaintiff's roof-top human safety anchoring system.  By this cruel and unusual act against Plaintiff caused the inexplicable immediate "roofing work stoppage" to Plaintiff's home.  Mike Spencer & Jake Porath, by causing the "roofing work stoppage" thereby implicated Bay View in the defiance and defacing of Plaintiff's **"State of Michigan Authorized Bear Creek Township Roofing Permit").**  Said inexplicable "roofing work stoppage" only serves to prove Plaintiff's complaint against individuals Defendants Mike Spencer, Jake Porath, Barbara Pfiel and Rance Carpenter...moreover, proving that the more improvements Plaintiff has made to her home (electrical; painting; landscaping & tree removal; etc.) the more fiercely upset Defendant Mike Spencer has continued to become.  It is believed that Defendant Mike Spencer wanted to force, in bad faith, an auction to Plaintiff's home with as few improvements as possible.  Indeed, Defendant Mike Spencer has repeatedly harassed and threatened Plaintiff with auctioning Plaintiff's home despite the fact that there never was a lien or mortgage on Plaintiff's home.  In 2012 and 2013 and 2014 Defendant Bay View conspired to defame Plaintiff and her home by spreading a most malicious falsehood:  that being the malicious falsehood of telling Bay View friends and neighbors that Plaintiff's home was owned by Chase Bank and had been foreclosed upon.  This malicious falsehood at all times had its genesis and dissemination point from the Wade Administrative Building which is at all times the office of the Executive Director.

Incredibly, two different municipalities in two different States of the USA where Plaintiff owns homes caused the immediate work stoppage of the application of new roofs on two separate homes owned by Plaintiff.

1) A further serious problem for Defendant Mike Spencer is that he must testify to his communication involvement with those who were responsible for the kidnapping event in Kent County, Michigan; including his communications with Defendants Rhonda Buchanan and Kelly Rose.

2) Moreover, Defendant Mike Spencer must also testify to his own extreme libeling of Plaintiff's son in a written communique to the private citizens of Bay View.  Said communique was also posted on the Bay View website and caused Plaintiff's son, a minor at all times, serious emotional harm.

3) Defendant Mike Spencer must also testify to why he allowed the mass electronic mailing of private citizens of Bay View written notice of the death of Walter Coffey Jr. on or about March 1, 2018 without first communicating with Plaintiff's husband, Walter Coffey III.  By any standard, it is abusive harassment for any person to learn for the first time of their father's death (or the death of any loved one for that matter) via the rumor mill "grapevine" from those who were on the receiving end of Defendant Mike Spencer's mass electronic emailing.  It represents the height of harassing rude insensitivity for Defendant Mike Spencer to unleash his mass electronic emailings of such a most sensitive human subject as the death of a loved one.  For such sociopathic behavior no apology was ever given by Defendant Mike Spencer.

4) Defendant Mike Spencer must also explain the repeated highly unwelcome and unwanted stalking of Plaintiff and her children throughout Bay View.

5) Defendant Mike Spencer must also explain why he and his wife would stare down derisively Plaintiff during public concert gatherings at Bay View's "John M. Hall Auditorium".

6) Defendant Mike Spencer must also testify why he showed up on Plaintiff's property on multiple occasions to harass Plaintiff about alleged debt without prior notice and without Plaintiff's permission, particularly after he was told to cease and desist.

7) Defendant Bay View and Defendant Mike Spencer have attempted to collect alleged debts via Defendant Bay View Real Estate Management Inc.; Defendant Plunkett Cooney; Defendant James Murray; Defendant Tony Presly.  In fact, Defendant Mike Spencer demanded and ordered that Defendant Tony Presly must illegally come onto our property and physically detain Plaintiff and her husband.  Defendant Mike Spencer stated that Defendant Tony Presly was licensed by the State of Michigan to physically detain and arrest Plaintiff on Plaintiff's own property.

8) Perhaps most egregiously:  Mike Spencer showing up on or about August 19, 2020 with the intent to have Defendant Tony Presly hired by Bay View to falsely detain and arrest Plaintiff and her husband. {Tony Presly's email address is proudly advertised on his business card as annihilator.11.series@gmail.com} Defendant Mike Spencer was heard to be screaming out so loud to Plaintiff that neighbors could hear:  **"…there's not a Judge in Emmet County who will uphold your USA Constitutional Rights!"** The harm was so great Plaintiff had to call the Emmet County Sheriff to control the early morning situation created entirely by Defendant Mike Spencer and witnessed by neighbors.

9) Defendant Mike Spencer has repeatedly declared that there is no "Pandemic".  In fact, he has come onto our front steps of our home without permission to exclaim such nonsense.  Defendant Mike Spencer arrogantly espouses irresponsible medical opinions as if he were the doctor that he is not; Defendant Mike Spencer arrogantly espouses irresponsible legal conclusions as if he were the lawyer that he most certainly is not----to wit: During an Open Meeting of the Board of Trustees, Defendant Mike Spencer stated unequivocally that Bay View is not subject to the **"Open Meetings Act"** of the State of Michigan.  It appears that Defendant Mike Spencer will say and articulate and conclude whatever he perceives to be convenient for himself and his job as Executive Director.

10) On or about the year of 2018, Defendant Mike Spencer commandeered Plaintiff's Tax Refund and applied it toward Plaintiff's alleged account.  In other words, Defendant Mike Spencer, by his own authority, disallowed Plaintiff from receiving or ever accessing a Tax Refund issued to all Bay View homeowners as a result of a "tax settlement" with Bear Creek Township.  Plaintiff, hereby expresses her grievance in the manner of which the "Tax Settlement Refund" was never directly issued to Plaintiff's bank account but instead diverted without her permission into a Bay View account against the permission and will of Plaintiff.

11) Defendant Mike Spencer must testify not only to his conversations with Defendant Kelly Rose, Defendant Lisa Leavenworth, and others involved in the Kent County kidnapping event; but he must also testify to any and all of his conversations with the **City of Freeport or anyone else who resided in the State of Illinois.**

12) There are plenty of other things that Defendant Mike Spencer must testify to including the purging and omissions of certain archival Bay View letters from Plaintiff's Bay View Administrative file.

INJUNCTION FOR VIOLATIONS OF THE FTC ACT AND FDCPA

48. **Under Section 13(b) of the FTC ACT, 15 U.S.C. § 53(b), this Court is authorized to issue a permanent injunction to ensure that Defendants will not continue to violate the FTC Act and the FDCPA.**

**Plaintiff asks this Honorable Federal Court to issue a permanent injunction against Bay View; "The Town Crier"; Bay View Real Estate Management Inc.; Bay View Board of Trustees; Plunkett Cooney; Mike Spencer; Jake Porath; Barbara Pfiel; etc. and other Defendants from attempting to auction or take possession of or seek any orders which preclude Plaintiff from any degree of quiet enjoyment or use or entering Plaintiff's home or application of a new roof or other maintenance projects----- (Defendant has already stopped Plaintiff's roofing project as of August 2021)**

**(Plaintiff also asks this Honorable Federal Court to order all Defendants to cease and desist from further defamation, slander, libel, and self-dealing against Plaintiff.)**

THE BALANCE OF EQUITIES TIPS IN PLAINTIFF'S FAVOR.

"In considering whether the balance of equities favors granting a preliminary injunction, courts consider whether an injunction would 'substantially injure other interested parties.'" Mylan Pharm., __ F. Supp.2d __, 2012 WL 1388256, at *15 (quoting Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006)). Here, the balance of equities overwhelmingly favors Plaintiff Ann Coffey.

EQUITABLE RELIEF FOR VIOLATIONS OF THE FTC ACT AND THE FDCPA 55.

Under Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, this Court is authorized to issue all equitable and ancillary relief as it may deem appropriate in the enforcement of the FDCPA and the FTC Act, including the ability to order the disgorgement of ill-gotten monies.

Among other things listed above, Defendant Plunkett Cooney and Defendant Bay View through their various Defendant "Third Parties" have caused and inflicted upon Plaintiff and family severe emotional distress by their astoundingly unwelcome verbal and written threats to auction Plaintiff's (free and clear $300,000.00 market value) home in order to satisfy a bogus "Default Judgment" of monies which amount to an unbelievable extortion of Plaintiff's resources in the middle of utterly inhumanely historic **"Pandemic Times"** in the titular name of Plaintiff's Christian Church; thus causing an extreme violation of Plaintiff's rights and violates her rightful "pursuit of happiness" and contractual right to "quiet

enjoyment" along with her Constitutionally guaranteed right not to be subjected to "cruel and unusual punishment". For all this abuse and intimidation during these harshly "Pandemic Times", Plaintiff seeks the maximum of punitive damages from Defendant Bay View and Defendant Plunkett Cooney and any other relief the USA Federal Court wishes to impose for such malicious collective behavior.

Defendants Plunkett Cooney and Bay View never posted anything on the doors at 1937 Stephens Lane in the years 2020 and 2021.

Defendant Plunkett Cooney and Bay View never sent any mail by any means to the address of 1937 Stephens Lane in the years 2020 and 2021.

Defendant Plunkett Cooney and Bay View sent mail during the years 2020 and 2021 to an unoccupied address in Cedar, Michigan---a full two and a half hour drive from Petoskey, Michigan.


CIVIL PENALTIES FOR VIOLATIONS OF THE FDCPA

49. Defendants violated the FDCPA as described above, with actual knowledge or knowledge fairly implied on the basis of objective circumstances, as set forth in Section 5(m)(l)(A) of the FTC Act, 15 U.S.C. § 45(m)(l)(A).

50. Each instance within five (5) years preceding the filing of this Complaint, in which Defendants failed to comply with the FDCPA in one or more of the ways described above, constitutes a separate violation for which Plaintiff seeks monetary civil penalties.

51. Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(l)(A), Section 8~4(a) of the FDCPA, 15 U.S.C. § 1692/(a), and Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990,28 U.S.C. § 2461, as amended, authorizes the Court to award monetary civil penalties of not more than $11,000 for each violation of the FDCPA before February 10, 2009, and not more than $16,000 for each violation of the FDCPA after that date.

## Relief Requested

PRAYER FOR RELIEF WHEREFORE, Plaintiff Ann Coffey, pursuant to 15 U.S.C. §§ 45(m)(l)(A), 53(b), and 16921, and the Court's own equitable powers, requests that the Court:

1. Enter judgment against Defendants and in favor of Plaintiff for each law violation alleged in this Complaint;

2. Enter a permanent injunction against Defendants to prevent future violations of the FTC Act and the FDCPA by Defendants;  to prevent padding of bills; to prevent extorting Plaintiff's resources; to prevent the auctioning of Plaintiff's home; to provide quiet enjoyment to Plaintiff and her husband who are Senior Citizens; to provide a full accounting of Plaintiff's Tax Settlement Refund;

3. Enter a permanent injunction against Defendants from auctioning Plaintiff's home.  {During the years 2015 and 2016 there was a Bay View family who was about $40,000.00 in arrears to Bay View, but Bay View opted to not sue the family or even threaten to auction their home.} Disturbingly, beginning in 2013 Bay View Administrators passed false and defamatory information to Mary Whitmer, Esq. (President of the Cleveland Bar Association) that Plaintiff's home had been foreclosed upon by Chase Bank in Manhattan. Ms. Whitmer, relying on said information contacted Chase Bank in Manhattan, NY. Ms. Whitmer soon learned that not only did Chase not have any pending foreclosure against Plaintiff's home; Chase never had any mortgage interest in Plaintiff's home ever...ever.  The degree of mal-management required to pass of such a heinous lie to members of the public cannot possibly be underestimated.  Therefore, Bay View deserves the fullest disapproval of this Court.

4. Enter a permanent injunction against Defendants from relentlessly and maliciously placing Plaintiff and her family in a false light.  Defendants must cease and desist via this Honorable Court's order from defaming; libeling; slandering; maligning; vilifying Plaintiff and her family.

5. Enter a permanent injunction against Defendants from prohibiting Plaintiff and her family from entering their home and having quiet enjoyment with the full complement of USA Constitutional enjoyment of property rights at all times.  If Plaintiff's choose to sell their home, then Plaintiff must be given the right to sell it in the best maintenance condition of all time without harassment or abuse. Plaintiff must be allowed to have her new roof put on her home without harassment from Bay View or its third party agents.  Plaintiff's Bear Creek Township Roofing Permit must be honored by Bay View and its third party agents.

6. Enter an order allowing Plaintiff to freely use Christie's Real Estate in Petoskey, Michigan to list, market, and sell Plaintiff's home via the use of the Multiple Listing Service (MLS) which is used all across the USA with the positive intent to list and advertise homes for sale nationally and internationally, thereby creating an un-stymied approach of maximizing all competitive market forces unto an optimum outcome.  Also to prevent Bay View from hindering or tethering Plaintiff to Real Estate Agents not of Plaintiff's choosing.  Also, to compel Bay View to square all of its By-Laws, Rules, and Regulations with the Laws of the USA Constitution. Allowing Bay View to make arrogant By-Laws, Rules, and Regulations that are in complete defiance of the USA Constitution serves nobody.  All it does is perpetuate the corrupt mindset that Bay View's leaders are above USA Constitutional Law.  In order to ensure Bay View never again violates Bay View homeowner property rights again: **Plaintiff requests that this Federal Court order and compel all Bay View "LEASEHOLDING RESIDENTIAL LOTS" to now convert over via USA Federal Court Order into Bay View "FREEHOLDING RESIDENTIAL LOTS" individually conveyed as deeded property along with the home.  Furthermore, the USA Federal Court should order that the Municipality of Bay View is no longer permitted to sue anyone or anything in the name of the "Christian Church" or "United Methodist Church"---since to do so, as we have discovered in Plaintiff's case in itself is an extreme violation of Plaintiff's religious rights, being a Christian herself.** In other words, Plaintiff finds it difficult for Bay View to prove that the majority of Christian people would not mind being sued by their own Christian Church or in the name of their own Christian Church. This major emotional "hot-point" must not be underestimated by the USA Federal Court to be at all trivial.  Indeed, it is one of Plaintiff's major grievances against Defendant Plunkett Cooney and Defendant Bay View that they not be able to sue another individual in the name of the "Christian Church", particularly another Christian. The Bible forbids it and so should the USA Federal Court. Any Bay View reference to a corporate name exhibiting reference to the Christian Church and/or United Methodist Church must be abolished and dissolved in order to preclude Defendant Bay View from ever suing another Christian again in the name of the Christian Church.

7. Award such relief as the Court finds necessary to redress injury to consumers and Plaintiff resulting from Defendants' violations of the FTC Act and the FDCPA, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; it cannot be emphasized enough that the malicious, defamatory, libelous, and harassing actions of Defendant Bay View and its bevy of Third Party agents, including Defendant Plunkett Cooney caused extensive hospitalization of Plaintiff's husband to the extent that he almost died.  Defendant Bay View must never be allowed to weaponize its Third Party "Town Crier" newspaper rag to harm and be an evil arm of Bay View's malicious leadership.

8. Award Plaintiff monetary civil penalties for each violation of the FDCPA occurring within five (5) years preceding the filing of this Complaint; and

9. Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

10. Declares that the Defendants' policies and practices, as alleged herein, violate the U.S.

Constitution and, therefore, categorically cannot be judicially enforced.

11. Declares that the Defendants' policies and practices, as alleged herein, violate the Michigan Constitution.

12. Declares that the Defendants' policies and practices, as alleged herein, violate other State statutes as set forth above, including the Summer Resort Act, the Michigan Nonprofit Corporation Act, MCL § 455.91 and MCL § 450.2488.

13. Enjoins the Defendants, and all persons in active concert or participation with Defendants, from:

      a. discriminating against any person on the basis of religion in any aspect of the sale or transfer of ownership of a dwelling;

      b. failing or refusing to notify the public that dwellings owned or offered for sale by the Defendants are available to all persons on a nondiscriminatory basis via the Multiple Listing Service (MLS) via the licensed real estate agent of Plaintiff's choice (in this case Christies, Petoskey, Michigan); and

      c. failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the Plaintiff and Plaintiff's family of and from the Defendants' unlawful practices to the position that they would have been in were it not for the discriminatory, harassing, defamatory, and threatening conduct. Plaintiff's husband has lived in the Petoskey area all of his life over 6 (six) decades. The damage done to Plaintiff and her husband's reputation by Defendants Plunkett Cooney and Bay View cannot be underestimated or mitigated.

14. Awards such damages as would fully compensate each person in Plaintiff's family aggrieved by the Defendants' discriminatory housing practices for injuries, severe emotional distress, loss of consortium, libel, slander, defamation, harassment, stalking, and other injuries caused by the Defendants' pattern or practice of discriminatory conduct, and as is further authorized for punitive/exemplary damages pursuant to 42 U.S.C. §§ 1983, 1988 and/or MCL § 37.2501 *et seq*. and other law.

15. Orders that all residential leasehold land be converted into residential freehold land, thus penalizing Municipal Bay View for its malicious behavior by depriving it from profiting in the future over its system and practice of renting land.

16. Orders that in exchange for the windfall to all Municipal Bay View homeowners of now owning freehold---instead of "renting" leasehold---that each residential lot be affixed an additional $100.00 per lot to their already calculated Bear Creek Township Tax. This, then also would simultaneously benefit the Petoskey Public Schools' District and create a "win-win" situation. Leaving Bay View's Public Buildings, Campus, waterfront, and recreational facilities to be under Bay View Rental Management authority.

17. Orders that Plaintiff may choose to sell her home with the licensed Real Estate Agent of her choice.

18. Orders that Plaintiff may utilize the "Multiple Listing Service" (MLS) to market her home and give her home maximum sales and free marketplace exposure, thus ensuring that Bay View cannot violate the Sherman Anti-Trust Act as it relates to Bay View's aiding and abetting of anti-competitive and discriminatory forces when it comes to home sales.

19. Orders that Municipal Bay View have at least one voting representative from the City of Petoskey and at least one voting representative from the County of Emmet sit on its governing Board of Trustees at all times.

20. Orders that Municipal Bay View honor and adhere to the "Open Meetings Act" (OMA) at all times and cease to have secret meetings in the cloistered homes of Board Members.  Plaintiff and family, while on a family walk, personally witnessed what appeared to be a formal gathering of Board Members at the secluded home along the Bay View woods of Defendant Board Member Robin Sims Caldwell.  This is a violation of the OMA.

21. Assesses any and all costs, interest, fees, and civil penalties against the Defendants as the law provides.

22. Orders Defendant Plunkett & Cooney; Defendant Bay View Real Estate Management, Inc.; Defendant Mike Spencer; Defendant Barbara Pfiel; Defendant Jake Porath; and all other Defendants who participated in the thieving seizure of thousands of dollars of Plaintiff's brand new bundles of shingles, roofing supplies, ladders, scaffolding, roof jacks, etc. and other personal property to be returned or repurchased at Defendant's expense.

23. Orders Defendants to remove Plunkett Cooney's legal fees from Bay View's padded bill against Plaintiff.

24. Orders Defendant Bay View to remove Drost Landscaping's fees from Bay View's padded bill against Plaintiff.

25. Orders Defendant Drost Landscaping to remove its own fees from Bay View's padded bill against Plaintiff.

26. Orders Defendant Bay View Real Estate Management and Defendant Carol Neithercut to remove any Citizens Bank loan obligations for waterfront dock extensions work from Bay View's padded bill against Plaintiff which she ordered in the middle of the pandemic upon information and belief per her brother David Neithercut (a business associate of billionaire Sam Zell) and his advice.

27. Orders a full investigation into all the billion dollar New York City Real Estate Wealth of Mary Grosvenor Grannis Mugler and Mary Anne Mugler Coffey (Plaintiff's mother-in-law) which was illegally converted and self-dealed upon by financial fraudster extraordinaire, Richard Carl Mugler Jr. (the Uncle of Plaintiff's husband)...some of which (for example, 2401 Third Avenue NYC) was purchased circa 2017 by the first generation American family from Morocco:  the billionaire Chetrit family who also purchased Chicago's Sears Tower.  Plaintiff's husband is the Executor to the Estate of Mary Grosvenor Grannis Mugler.

28. Affords all other declaratory, legal or equitable relief that appears appropriate at the time of final judgment.

29. Given the fact that Defendant Bay View and Defendant Plunkett Cooney have violated their own USA Federal Court (2019) **Consent Order** out of Kalamazoo, Michigan this Court should impose the maximum penalties per violation.  Indeed, Bay View has hunted the Coffey family as if it were hosting the "Hunger Games".  Unfortunately, sociopathic behavior and the willingness to harm innocent people is a ubiquitous trait within the human population.  This Honorable Court must hold those who exhibit sociopathic behavior yet choose to simultaneously take umbrage under the name of the Christian Church to the highest judgmental standard.


Respectfully submitted,

Ann Coffey           2/23/2022

Ann Coffey

400 Carrie Street

Sault St. Marie, Michigan 49783

231 758 6052

wallycoffey@yahoo.com

JURY DEMAND :        Plaintiff demands a trial by jury of all issues in this matter.



Extrem...

**Apply shi...** ments on this side.

an QR code to
hedule a pickup

**mestic Shipments**
o qualify for the letter rate, UPS Express® envelopes may only contain
orrespondence, urgent documents, and/or electronic media, and must weigh
oz. or less. UPS Express envelopes containing items other than those listed
r weighing more than 8 oz. will be billed by weight.

**ernational Shipments**
ne UPS Express envelope may be used only for documents of no commercial
lue. Certa n countries consider electronic media as documents. VIsit
os.com/importexport to verify if your shipment is classified as a document.

qualify for the letter rate, the UPS Express envelope must weigh 8 oz. or less.
PS express envelopes weighing more than 8 oz. will be billed by weight.

**e:** UPS Express envelopes are not recommended for shipments of
tronic media containing sensitive personal information or breakable items.
ot send cash or cash equivalent.

This envelope is for use

WALTER / ANN COFFEY
9066359000                                    **1 LBS**        **1 OF 1**
4234 I-75 BUSINESS SPUR
SAULT SAINTE MARIE MI 49783

SHIP TO:
    ATTN: OFFICE OF THE CLERK
    9062262021
    UNITED STATES DISTRICT COURT
    330 FEDERAL BLDG
    202 W WASHINGTON ST
    **MARQUETTE MI 49855**

**MI 498 7-01**

**UPS GROUND**

TRACKING #: 1Z 685 47A 03 9002 7268

BILLING: P/P

Trx Ref No.: PM PKG ID 353791
Trx Ref No.: FROM WALTER / ANN COFFEY